[Crim. No. 13354. Fourth Dist., Div. One. Apr. 23, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID LEE NIXON, Defendant and Appellant.

## COUNSEL

William R. Fletcher, under appointment by the Court of Appeal, and Fletcher, Reilly & Patton for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen and Keith I. Motley, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MILKES, J.\***—Appellant was arrested for violation of Penal Code section 12020, subdivision (a), possession of nunchakus. The arrest and subsequent probation revocation hearing in which evidence was presented resulted in a modification of probation and a jail sentence. The underlying charge of Penal Code section 12020, subdivision (a), was dismissed. Nixon appeals from the order modifying the terms and conditions of probation.

Nixon was the driver of a vehicle which was detained in Fallbrook by deputy sheriffs. The color of the car matched a report of a vehicle which had been involved in a burglary. The car was seen alongside another vehicle attempting to attract the attention of several girls. All occupants were given a pat-down search. One occupant had a knife in his pants pocket. In response to a question as to what he was putting under the seat of the car, one of the occupants answered that there were beer cans in the vehicle. The arresting officers searched the vehicle. Nunchakus were found under the seat. The officers asked who owned the nunchakus; appellant responded that he did.

At the evidentiary hearing to revoke probation, appellant moved to continue the proceeding until after or to coincide with the preliminary hearing for the purpose of a ruling on a motion to suppress. The district attorney acknowledged on the record that the charges against Nixon would be dismissed because of the search and seizure issues involved in the arrest for possession of nunchakus. Following the district attorney's representation as to the pending dismissal, the court conducted the hearing and heard the evidence regarding the detention of the vehicle and arrest of Nixon.

Nixon contends his due process rights were violated by admitting evidence at the probation revocation hearing which was illegally obtained.

---

*Assigned by the Chairperson of the Judicial Council.

Nixon also claims the denial of his request for a continuance was in contravention of equal protection under law.

California Search and Seizure Practice (Cont.Ed.Bar 1977, 2d ed.) § 5.22, pages 186 to 187, provides: "The Adult Authority may consider illegally seized evidence when deliberating whether or not to revoke parole on an offense unrelated to that evidence, because

"'the incremental deterrent effect that will realistically be achieved by shielding the Adult Authority from illegally procured evidence is slight; the bungling police officer is not likely to be halted by the thought that his unlawful conduct will prevent the termination of parole.'

"*In re Martinez* (1970) 1 C3d 641, 649, 83 CR 382, 388. *Martinez* leaves room for a different holding in the face of police conduct so egregious as to offend the traditions and collective conscience of our people (citing *Griswold* v. *Connecticut* (1965) 381 US 479, 493) or as to shock the conscience (citing *Rochin* v. *California* (1952) 342 US 165, 172). 1 C3d at 650, 83 CR at 388.

"The same problem was presented with regard to revocation of probation in *People* v. *Hayko* (1970) 7 CA3d 604, 86 CR 726. The court found no reason to apply a different rule to a judge than applies to an administrative agency (but see the dissent of Justice Peters in *In re Martinez* (1970) 1 C3d 641, 652, 83 CR 382, 389) and found the exclusionary rule inapplicable on the basis of the *Martinez* holding. 7 CA3d at 610, 86 CR at 730. The federal rule is similar. *U.S.* v. *Winsett* (9th Cir 1975) 518 F2d 51."

■    The purpose of the exclusionary rule is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it. The rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings. As it serves the purpose of deterring police misconduct, the exclusionary rule is a "needed, but grudgingly taken medicament; no more should be swallowed than is needed to combat the disease." (Amsterdam, *Search, Seizure and Section 2255: A Comment* (1964) 112 U.Pa.L.Rev. 378, 389.) ■    Even assuming the application of the exclusionary rule here would achieve some minimal deterrent effect, we find the potential benefits were significantly outweighed by potential damage to the probation system. The purpose of probation conditions is

to enhance the chance for rehabilitation while simultaneously affording society a measure of protection. Because violation of probation conditions may indicate the probationer is not ready or is incapable of rehabilitation by integration into society, it is extremely important that all reliable evidence shedding light on the probationer's conduct be available during probation revocation proceedings.[1]

Appellant relies on *People* v. *Zimmerman* (1979) 100 Cal.App.3d 673 [161 Cal.Rptr. 188], which held evidence ordered suppressed pursuant to Penal Code section 1538.5, subdivision (d), could not later be used at a probation revocation hearing. That case is based on the rationale of *People* v. *Belleci* (1979) 24 Cal.3d 879 [157 Cal.Rptr. 503, 98 P.2d 473]. However, the proscription against the use of suppressed evidence in these cases was not based on any constitutional mandate, but rather, the language of Penal Code section 1538.5.

■ Nixon asserts discrimination in violation of equal protection in denying his request to continue the hearing or grant a stay until after the preliminary hearing. He contends the underlying offense was dismissed because incarceration was achieved without the necessity of prosecution. Our Supreme Court admonished prosecutors in *People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024], as to the desirability of refraining from starting revocation proceedings until the related criminal prosecution is completed.

Here, there was no discrimination as the prosecutor assured the court the criminal charges were being dismissed. The court only heard the revocation hearing after it satisfied itself as to the dismissal. The issue of the continuance was no longer relevant. The prosecutor could not have known the sentence on the revocation of probation at the time it acknowledged the dismissal. *Coleman* was satisfied and followed as the court proceeded *after* the related criminal prosecution for practical purposes had been completed.

■ Recognizing that both *People* v. *Zimmerman, supra*, 100 Cal. App.3d 673, and *People* v. *Belleci, supra*, 24 Cal.3d 879, involve a stat-

---

[1]An argument can be advanced when police at the moment of search know a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing the evidence would be inadmissible in any criminal proceeding. Here, however, the police stopped the vehicle unaware that Nixon, a probationer, was the driver.

utory extension of the exclusionary rule which is not constitutionally mandated,[2] Nixon nonetheless argues there is no legitimate reason to extend this benefit to defendants simultaneously charged with the substantive offense while denying it to defendants against whom the district attorney seeks only to revoke probation. He contends this results in an irrational system since the more flagrant the police misconduct, the greater the chance the district attorney will forego prosecution, thus guaranteeing that the evidence will be admissible in the probation revocation hearing.

While there is some logic to appellant's argument, we think it falls far short of the irrationality necessary to sustain an equal protection challenge. The procedural advantage extended to prosecuted defendants—the availability of a section 1538.5 motion—is counterbalanced by the possibility of increased punishment. Such balancing judgments are generally within the realm of legislative discretion. The Legislature may have concluded that while no branch of the judiciary should rely on evidence previously determined to be unconstitutionally obtained, the defendant's opportunity to challenge such constitutionality may be legitimately restricted.[3]

■ The court considered the circumstances of the search to insure the police conduct was not so egregious as to shock the conscience. "[T]his course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation. [¶] .... Due process of law, as a historic and generative principle, precludes defining, and thereby confining, these standards of conduct more precisely than to say that convictions cannot be brought about by methods that offend 'a sense of justice.'" (*Rochin* v. *California* (1952) 342 U.S. 165, 172-173 [96 L.Ed. 183, 190, 72 S.Ct. 205, 209-210, 25 A.L.R.2d 1396].) The lower court could properly conclude

---

[2]See *People* v. *Zimmerman, supra,* 100 Cal.App.3d at pages 675 to 676: "The court in *Belleci* held that subdivision (d) of Penal Code section 1538.5 'does not make *all* illegally obtained evidence admissible "at any trial or other hearing," but only such evidence as has been the subject of a motion to suppress "granted pursuant to the proceedings authorized by this section," i.e., section 1538.5. To that extent alone, the Legislature has "preempted" the above-stated judicial function and enacted a "statutory exclusionary rule."' [Citation.]" (Italics in original.)

[3]We additionally note that at the time appellant's vehicle was stopped, beer was also found. Abstinence from alcohol was also a condition of probation and this fact alone could have been used as a basis for revoking probation. Since possession of alcohol is not a crime for adults, there could be no simultaneous prosecution and accordingly no opportunity to suppress this evidence under Penal Code section 1538.5.

the police conduct and intrusion did not offend "a sense of justice" in the constitutional sense.

Judgment affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.

A petition for a rehearing was denied May 11, 1982.