[No. A036918. First Dist., Div. Two. Feb. 18, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS HARRISON, Defendant and Appellant.

## COUNSEL

Richard L. Rubin, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugijama, Assistant Attorney General, David D. Salmon and Peter Crook, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KLINE, P. J.**—Carlos Harrison, the appellant, claims the trial court improperly revoked his probation on the basis of evidence that should have been excluded. On appeal, he asks this court to disapprove of *People v. Hayko* (1970) 7 Cal.App.3d 604 [86 Cal.Rptr. 726], which held that the exclusionary rule does not usually apply in probation revocation hearings. He asserts that the *Harvey-Madden* rule should have applied to his hearing even if the exclusionary rule should not. (*People v. Harvey* (1958) 156 Cal.App.2d 516 [319 P.2d 689]; *People v. Madden* (1970) 2 Cal.3d 1017 [88 Cal.Rptr. 171, 471 P.2d 971].) Finally, appellant argues that the holding of Division Five of this district in *People v. Washington* (1987) 192 Cal.App.3d 1120 [236 Cal.Rptr. 840] (hg. den. Oct. 20, 1987), controls and requires reversal.

### STATEMENT OF THE CASE

On June 4, 1985, the San Francisco Superior Court suspended a three-year sentence and placed appellant on probation for his conviction for violation of Health and Safety Code section 11359 (possession of marijuana for sale.) On October 15, 1985, the district attorney moved to revoke appellant's probation because of another arrest for a section 11359 violation. The charge was dismissed, but probation was revoked. The court imposed a two-year prison term, but suspended execution on the condition that appellant spend 90 days in county jail.

When appellant was arrested on September 12, 1986, for possession of cocaine (Health & Saf. Code, § 11350), the district attorney again moved to

revoke probation and dismiss the charge. After a hearing, the court revoked probation and ordered appellant to serve the suspended two-year prison sentence, with credit for time served. Appellant filed a timely notice of appeal on November 20, 1986.

### STATEMENT OF FACTS

At the hearing on revocation of probation, San Francisco Police Officers Drago and Dalton testified about the circumstances surrounding appellant's arrest. The court allowed Drago and Dalton to testify about statements made by Officers Dorsey and Bruenman, who were not at the hearing. This hearsay evidence was admitted solely for the purpose of establishing probable cause. Over objection, samples of rock cocaine seized from appellant were admitted into evidence.

Officers Drago and Dalton testified they and other officers were on duty at a housing project at Eddy and Laguna Streets in San Francisco on September 12, 1986, shortly after midnight. They were part of a special narcotics unit. Drago and Dalton were positioned outside one of the buildings, where they received radio information from Dorsey and Bruenman, who were inside one of the buildings observing various activities.

Dorsey and Bruenman reported that they saw what they believed to be narcotics transactions. They observed a group of men engaged in a pattern of activity familiar to them from other narcotics arrests. One of the men kept going back and forth between two buildings, which led the police to believe he was running drugs from one spot to another to effect drug deals. Dorsey and Bruenman radioed a description of this man, reporting that he wore a red athletic jacket, white pants and shoes and a blue baseball cap. This individual was appellant.

Later on, Bruenman and Dorsey reported that they had taken one suspect into custody and that his four companions, black males, were running down the stairs of the building. The suspect had a loaded gun and a "whole handful" of suspected rock cocaine. In the group of fleeing men was the man in the red jacket, blue hat and white pants and shoes. Drago and Dalton and three other officers stopped the four men. Dorsey and Bruenman were one floor above with the suspect in custody.

Drago searched appellant and found two small rocks of cocaine in the lining of his jacket. Another officer found cocaine in the pocket of appellant's pants. Dalton searched appellant at the jail, after his arrest, and found two more rocks of cocaine in his jacket. Appellant had no money.

Both Drago and Dalton testified about why they stopped and searched appellant. Although Drago did not observe appellant prior to stopping him, he learned that a man fitting appellant's description was one of a group that appeared to be dealing drugs. Dalton testified that appellant was stopped because he had been reported as being involved in suspected narcotics sales and because he was fleeing from the spot where a companion with a loaded gun and large quantity of cocaine had been taken into custody.

## DISCUSSION

The parties agree about the facts relating to the propriety of searching appellant. ■ Whether the exclusionary rule or *Harvey-Madden* rule applies to probation revocation hearings is a question of law. Whether a particular opinion of this district controls is also a legal issue. We must, therefore, "measure the facts as found by the trier against constitutional standards" governing search and seizure. (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 477 [198 Cal.Rptr. 538, 674 P.2d 240].)

### I.

### *The Exclusionary Rule Does Not Apply to Probation Revocation Hearings*

■ Appellant requests us to disapprove of *People* v. *Hayko, supra,* 7 Cal.App.3d 604. We decline to do so because we think *Hayko's* reasoning is correct and because we believe Proposition 8 demands the same result. *Hayko* held that illegally obtained evidence may be considered in determining whether to revoke probation, as long as the illegality was not egregious. (*Id.,* at p. 610.) The court extended to probation revocation hearings an exception to the exclusionary rule that the Supreme Court enunciated for parole revocation hearings. (*Id.,* at p. 610, citing *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734].) Divisions of this district, including our own, as well as other Courts of Appeal, continue to follow *Hayko.* (See, e.g., *People* v. *McNeal* (1979) 90 Cal.App.3d 830 [153 Cal.Rptr. 706]; *In re Carroll* (1978) 80 Cal.App.3d 22 [145 Cal.Rptr. 334]; *People* v. *Rafter* (1974) 41 Cal.App.3d 557 [116 Cal.Rptr. 281]; *People* v. *Petersen* (1972) 23 Cal.App.3d 883 [100 Cal.Rptr. 590]; *People* v. *Nixon* (1982) 131 Cal.App.3d 687 [183 Cal.Rptr. 878].)

*Hayko* reasoned that the trial court and Adult Authority have "analogous" roles as to determinations about revoking probation and parole. (*People* v. *Hayko, supra,* 7 Cal.App.3d at p. 610.) We do not agree with appellant's suggestion that *People* v. *Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313] makes this logic unsound. *Vickers* examined

the due process requirement that *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] imposed in parole revocation situations. (*People* v. *Vickers, supra,* 8 Cal.3d 451.) The court found no difference between parole and probation revocation proceedings "insofar as the demands of due process are concerned," (*id.,* at p. 458) and the United States Supreme Court agreed. (*Gagnon* v. *Scarpelli* (1973) 411 U.S. 778, 782 [36 L.Ed.2d 656, 661-662, 93 S.Ct. 1756].)

*Morrissey,* however, did not "equate . . . parole revocation [hearings] to a criminal prosecution in any sense . . . "; the court defined the minimum due process requirements and left it to the states to determine "flexible" procedural rules for implementing these demands. (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 489 [33 L.Ed.2d at 484].) The United States Supreme Court recognized that the function of parole necessitated versatility in its administration: "Its purpose is to help individuals reintegrate into society as constructive individuals . . . ." (*Id.,* at p. 477 [33 L.Ed.2d at p. 492].) Violation of conditions of parole bring into play competing factors—rehabilitation and protection of society. (*Id.,* at pp. 479-480 [33 L.Ed.2d at p. 493].) Probation also has the dual goals of rehabilitation and protection of society. (*People* v. *Nixon, supra,* 131 Cal.App.3d at pp. 691-692.) As with parole, probation revocation procedures must not be too rigid. The trial court " 'is not determining whether the defendant is guilty or innocent of a crime. Rather [it] must determine whether the convicted offender "can be safely returned to and remain in society." ' " (*In re Coughlin* (1976) 16 Cal.3d 52, 57 [127 Cal.Rptr. 337, 545 P.2d 249], quoting *People* v. *Hayko, supra,* 7 Cal.App.3d at p. 610.)

█ For these reasons, although a probationer must be afforded due process of law before his "conditional liberty" is taken away (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 480 [33 L.Ed.2d at p. 494]), revocation hearings differ from criminal trials in a number of ways. Penal Code section 1203.2, subdivision (a), provides for revocation of probation "if the interests of justice so require and the court, in its judgment, has reason to believe" the probationer's conduct so warrants. The statute gives broad discretion to the trial court. (*In re Larsen* (1955) 44 Cal.2d 642, 645 [283 P.2d 1043]; *In re Coughlin, supra,* 16 Cal.3d at p. 56; *People* v. *Walker* (1963) 215 Cal.App.2d 609, 612 [30 Cal.Rptr. 440].) The standard of proof for misconduct that would justify revocation of probation is lower than the " 'beyond a reasonable doubt' " test used in criminal trials. (*In re Coughlin, supra,* 16 Cal.3d at p. 56.) A " 'clear and convincing' showing" will suffice. (*People* v. *Coleman* (1975) 13 Cal.3d 867, 876, fn. 8 [120 Cal.Rptr. 384, 533 P.2d 1024].) There is no insanity defense in revocation hearings and the defendant need not receive a warning about the consequences of admitting a

probation violation. (2 Witkin, Cal. Crimes (1985 supp.) § 1084, pp. 680-681.)

■ If a probationer is not afforded the full due process rights he had as a criminal defendant, is there any reason to give him the full advantage of the exclusionary rule? We think not. Due process requirements implement the substantive constitutional rights guaranteed by the Fifth and Four-teenth Amendments. ■ The exclusionary rule, on the other hand, is " 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitu-tional right of the party aggrieved.' " (*United States* v. *Leon* (1984) 468 U.S. 897, 906 [82 L.Ed.2d 677, 687, 104 S.Ct. 3405], quoting *United States* v. *Calandra* (1974) 414 U.S. 338, 348 [38 L.Ed.2d 561, 571, 94 S.Ct. 613].)

■ Decisions of the supreme courts of both the United States and California support our conclusion that the exclusionary rule should not apply to probation revocation hearings. *Morrissey* stated that the revocation "process should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial." (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 489 [33 L.Ed.2d at p. 499].) The California Supreme Court has sanctioned consideration of otherwise inadmissible evidence by trial courts faced with probation violations. *People* v. *Maki* (1985) 39 Cal.3d 707, 717 [217 Cal.Rptr. 676, 704 P.2d 743], upheld revocation of probation based on hearsay evidence that did not come under any hearsay exception. *Coughlin* allowed the trial court to use evidence of a criminal charge for which the probationer had been acquitted. (*In re Coughlin, supra,* 16 Cal.3d at p. 54.) Due to the importance of "the interest of society in preventing a premature release of the offender . . . [o]nly by examining *all* the available evidence may the decision-making body exercise the informed discretion which the Legislature has conferred upon it." (*Ibid.,* italics in original.) In reasoning through to this conclusion, the court cited *Hayko* for the "uni-formly held" proposition that reversal on appeal would not prevent a trial court hearing revocation proceedings from " 'further inquiry into the sub-ject matter of that case,' " even though the evidence of the crime had been illegally seized. (*Id.,* at p. 57, quoting *People* v. *Hayko, supra,* 7 Cal.App.3d at p. 611.)[1]

■ The result suggested by these cases is also achieved by the process that determines when to apply the exclusionary rule to a particular proce-dure: A balancing test weighs the beneficial deterrent effect of exclusion against the cost of "preventing the use . . . of inherently trustworthy tangi-

---

[1] Respondent calls this citation with approval. Appellant calls it "passing dicta." We call it a link in the chain of reasoning by which the exclusionary rule is held inapplicble to proba-tion revocation.

ble evidence . . . ." (*United States* v. *Leon, supra,* 468 U.S. at p. 907 [82 L.Ed.2d at p. 688].) ▮▮ Under this approach, illegally seized evidence is admissible in probation revocation hearings. "Even assuming the application of the exclusionary rule [to these hearings] would achieve some minimal deterrent effect, we find the potential benefits [are] significantly outweighed by potential damage to the probation system. . . . Because violation of probation conditions may indicate the probationer is not ready or is incapable of rehabilitation by integration into society, it is extremely important that all reliable evidence shedding light on the probationer's conduct be available during probation revocation proceedings." (*People* v. *Nixon, supra,* 131 Cal.App.3d at pp. 691-692, fn. omitted.)

The *Leon* balancing test points to the other ground for holding that *Hayko* is good law—Proposition 8 mandates its holding. "[R]elevant evidence shall not be excluded in any criminal proceeding, including pretrial and postconviction motions and hearings . . . ." (Cal. Const., art. I, § 28, subd. (d).) *Hayko* was decided 12 years before this language became part of the California Constitution. To hold inadmissible evidence that was admissible before Proposition 8 took effect would be a curious result, one that would be possible only if federal law so mandated. (*In re Lance W.* (1985) 37 Cal.3d 873, 887 [210 Cal.Rptr. 631, 694 P.2d 744].)

We believe that federal law does not require application of the exclusionary rule to probation revocation hearings. The Ninth Circuit held that "evidence obtained in violation of the Fourth Amendment is admissible in probation revocation proceedings if, at the time of the search, the law enforcement officers did not know or have reason to believe that the suspect was on probation. [Citation.] This accords with the almost unanimous view that the exclusionary rule does not usually apply in probation revocation proceedings."[2] (*United States* v. *Vandemark* (9th Cir. 1975) 522 F.2d 1019, 1020, citing 5 federal and 11 state cases in accord.) As both *Vandemark* and *Leon* note, the exclusionary rule has many exceptions in cases where the deterrent effect of the rule is outweighed by other considerations. (*United*

---

[2] The police did not know appellant was on probation. Respondent suggests that *People* v. *Bravo* (1987) 43 Cal.3d 600 [238 Cal.Rptr. 282, 738 P.2d 336] makes appellant's status important in spite of the officers' lack of knowledge. In *Bravo,* a probationer, who had consented to searches without a warrant as a condition of probation, claimed that the police did not have "reasonable cause to believe he was currently involved in criminal activity when they searched his apartment." (*People* v. *Bravo, supra,* 43 Cal.3d at pp. 602-604.) The Supreme Court held that the probationer voluntarily waived his Fourth Amendment right to privacy when he accepted the condition to probation, and that the police could search without probable cause as long as they did not do so to harass. (*Id.,* at pp. 609-611.)

Respondent argues that *Bravo* means appellant had "no legitimate interest" which the exclusionary rule could protect. Because we have other grounds for holding that the exclusionary rule is inapplicable to appellant's case, we do not discuss respondent's interpretation of *Bravo.*

*States* v. *Vandemark, supra,* 522 F.2d at p. 1021; *United States* v. *Leon, supra,* 468 U.S. at p. 909 [82 L.Ed.2d at pp. 689-690].)

Using the *Leon* balancing test results in admitting the fruits of the poisonous tree. (See *People* v. *Nixon, supra,* 131 Cal.App.3d at pp. 691-692.) *Leon* itself created an exception to the exclusionary rule where police officers reasonably rely on a probable cause determination by a magistrate that later proves to have been invalid. (*United States* v. *Leon, supra,* 468 U.S. at pp. 921-922 [82 L.Ed.2d at pp. 697-698].) In the case now before us, Officers Drago and Dalton believed they had probable cause to search appellant; they relied in good faith on the reports from their fellow officers. There is no objective proof that probable cause was lacking, only the speculation that the other officers fabricated it. Considering that we are dealing with a probation revocation proceeding, we believe federal law requires that the evidence be admitted, not excluded.[3]

## II.

### No Other Constitutional Considerations Require Application of the Harvey-Madden Rule to Probation Revocation Hearings

■ Under the *Harvey-Madden* rule, when a police officer gives another information that gives the latter probable cause to search or arrest, "the prosecution [must] show that the officer who originally furnished the information had probable cause to believe that the suspect committed a felony." (Witkin, Cal. Criminal Procedure (1985 supp. pt. 2) § 980, p. 213.) Both the *Harvey* and *Madden* courts reasoned that such a rule prevented police departments from "manufacture of reasonable grounds for arrest [or search] . . . without establishing under oath" that the original officer actually had the information. (*People* v. *Madden, supra,* 2 Cal.3d at p. 1021; *People* v. *Harvey, supra,* 156 Cal.App.2d at p. 523.) If the first officer does not testify at trial, the record will not show probable cause and the evidence must be excluded. (*People* v. *Madden, supra,* 2 Cal.3d at p. 1024.) Thus, the *Harvey-Madden* rule is a branch of the exclusionary rule.

■ Appellant argues that even if the exclusionary rule does not apply to probation revocation hearings, due process demands that the *Harvey-Madden* rule should operate in probation revocation hearings because it

---

[3] We have noted appellant's discussion of Georgia and Oklahoma law, but are obliged to follow California and Federal law. We also find the Ninth Circuit position that the exclusionary rule does not apply to probation revocation hearings more in tune with United States Supreme Court search and seizure opinions than the contrary opinions of other circuits cited by appellant. (*United States* v. *Vandemark, supra,* 522 F.2d at p. 1020.)

implements his right to confront and cross-examine his accusers.[4] However, appellant's contention fails to take into account the purpose of these rights. Although both confrontation and cross-examination are deemed essential to a fair trial, (*Chambers* v. *Mississippi* (1973) 410 U.S. 284, 294 [35 L.Ed.2d 297, 308, 93 S.Ct. 1038]) a probation revocation is not a trial where guilt or innocence is determined. (*In re Coughlin, supra,* 16 Cal.3d at p. 57.) Furthermore, cross-examination "helps assure the 'accuracy of the truth-determining process.'" (*Chambers* v. *Mississippi, supra,* 410 U.S. at p. 295 [35 L.Ed.2d at p. 309], citations omitted.) There is no question about the accuracy of the trial court's determination: It is certain the police found cocaine on appellant's person and possession of cocaine provides a sufficient ground for revoking probation. (Pen. Code, § 1203.2.)

Appellant relies on *People* v. *Winson* (1981) 29 Cal.3d 711, 714-715 [175 Cal.Rptr. 621, 631 P.2d 55], where the Supreme Court reversed revocation of probation based on hearsay evidence—a transcript of the assault victim's testimony at the preliminary hearing. The court found a Sixth Amendment violation. (*People* v. *Winson, supra,* 29 Cal.3d at p. 717.) In *Winson,* the victim's testimony went to the truth of the probation violation with which the defendant had been charged; the victim was indeed the accuser. (*Id.,* at pp. 714-715.) Here, the trial court made it clear that the hearsay statements of Dorsey and Bruenman were not being introduced for the truth of the matters asserted, but to show that the officers who searched appellant had probable cause to do so. These officers were not appellant's accusers. His accusers were the district attorney who filed the motion to revoke probation and the officers who searched him, found the cocaine, and arrested him. Appellant had ample opportunity to confront and cross-examine the officers who arrested him.

*Goodlow* v. *Superior Court* (1980) 101 Cal.App.3d 969 [162 Cal.Rptr. 121], in which the trial court refused defendant's request to disclose the name of an informer who told the police he was involved with drugs, is likewise not helpful to appellant. (*Goodlow* v. *Superior Court, supra,* 101 Cal.App.3d at p. 972.) The appellate court decided a probationer has a right to know the name of an informer if the informer is likely to exonerate him. (*Id.,* at pp. 974-975.) In the case before us, appellant knew the names of the officers who reported his suspicious activities; they were not confidential informers. Moreover, appellant does not state a good reason to believe they could exculpate him. All we have is "sheer speculation" that these officers might indicate that appellant's race caused them to believe he was dealing drugs, a supposition that would not even pass the *Goodlow* test for disclosing an informer's name. (*Id.,* at p. 975.)

---

[4]These rights are also guaranteed by the Sixth Amendment, but appellant rests his argument on due process. (*Smith* v. *Illinois* (1968) 390 U.S. 129 [19 L.Ed.2d 956, 88 S.Ct. 748].)

Appellant does not claim that he tried to subpoena the missing officers or was prevented from calling them as witnesses. Due process does not require a rule that the district attorney must produce every police officer who knows something that might bear on a probation violation. Appellant's argument that the *Harvey-Madden* rule is necessary to insure due process tends to collapse into arguments about search and seizure, but these are of no avail.

## III.

### *A Recent Opinion From This District Does Not Warrant Reversal*

■ Appellant asserts that *People* v. *Washington, supra,* 192 Cal.App.3d 1120, requires us to reverse the revocation of probation in this case. We do not agree. *Washington* involved revocation of probation based on a drug incident that took place in the same location as appellant's arrest, but the similarity between the facts in that case and the facts now before us ends there. (*Id.,* at pp. 1122-1123.) In *Washington,* the police approached a group of men huddled together and moving their hands. (*Ibid.*) When the group dispersed at the approach of the police, the officers followed the defendant, called to him and began to chase him. (*Ibid.*) The officers "had no objective factors upon which to base any suspicions that the group was involved in illegal activity . . . ." (*Id.,* at p. 1128.) The incident did not take place at a " 'late or unusual hour . . . from which any inference of criminality may be drawn.' " (*Id.,* at p. 1123, quoting *People* v. *Bower* (1979) 24 Cal.3d 638, 645 [156 Cal.Rptr. 856, 597 P.2d 115].) The only reason the testifying officer could give for pursuing the defendant was his feeling that "Black men he saw in the area usually had something to hide if they ran from police." (192 Cal.App.3d at p. 1123.)

The court concluded that race was the only reason for pursuing and detaining the defendant and that this "triggered the type of police conduct which offends our 'sense of justice.' " (*Id.,* at p. 1128, quoting *Rochin* v. *California* (1952) 342 U.S 165, 173 [96 L.Ed. 183, 190, 72 S.Ct. 205, 25 A.L.R.2d 1396].) For this reason, the court held that the trial court should not have admitted evidence obtained as a result of the offensive police conduct. (192 Cal.App.3d at p. 1128) It reversed the revocation of probation without discussing *Hayko*; the deplorable police conduct provided a federal ground for excluding the evidence. (*Id.,* at p. 1127, citing *In re Lance W., supra,* 37 Cal.3d 873.)

We find that the police conduct in appellant's case does not taint his detention and search. Drago and Dalton did have objective reasons for stopping appellant. He had been in a group which appeared to be dealing

drugs. The group's activity was suspicious because it matched a pattern of activity that had led to other narcotics arrests. The activity took place after midnight. Appellant fled from the spot where a cohort was taken into custody with a loaded gun and a large quantity of cocaine on his person. Flight from the police plus other circumstances can be grounds for detention. (*People* v. *Aldridge, supra,* 35 Cal.3d at p. 479.) Although Dorsey and Bruenman, who reported these circumstances to Drago and Dalton, did not testify at the hearing, there is no reason to believe that Drago and Dalton lied about what they learned the night of the arrest. The judge who revoked probation believed them and refused to suppress the evidence they seized. We come to the same conclusion and do not feel bound by *Washington.* The police conduct in the case at bench does not affront our " 'sense of justice.' " (192 Cal.App.3d at p. 1128, quoting *Rochin* v. *California, supra,* 342 U.S. at p. 173 [96 L.Ed. at p. 190].)

The judgment is affirmed.

Smith, J., and Benson, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 2, 1988.