[Nos. A128857, A128858. First Dist., Div. One. May 19, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
LEROY RACKLIN, Defendant and Appellant.

**COUNSEL**

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MARGULIES, J.**—Defendant Leroy Racklin appeals from a judgment imposing a four-year term in state prison following the revocation of his probation. He contends the trial court erred in considering evidence in the revocation hearing of an admission elicited from him by police officers in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602] (*Miranda*). We find the *Miranda* exclusionary rule does not apply in probation revocation proceedings, and defendant failed in any event to meet his burden of proving prejudice. We therefore affirm the judgment.

## I. BACKGROUND

### A. *Defendant's Drug Convictions*

In exchange for the dismissal of various enhancement allegations and a three-year term of probation, defendant pleaded guilty to a charge of transportation and/or sale of cocaine base (Health & Saf. Code, § 11352, subd. (a)) in superior court case No. 202772. He was released on probation on September 10, 2007.

Following new arrests in September and October 2007, and the filing of new criminal charges on October 18, 2007, in superior court case No. 203741, the district attorney moved to revoke defendant's probation. On November 26, 2007, defendant admitted a probation violation in case No. 202772 and pleaded guilty to a felony sale of a substance falsely represented to be a controlled substance (Health & Saf. Code, § 11355) in case No. 203741. In return, the prosecution agreed to defendant's reinstatement on modified terms of probation in the old case, the dismissal of the enhancement allegations and a grant of a three-year term of probation in the new case, and a concurrent jail term condition of probation in each case. On January 9, 2008, the court imposed the probation terms and conditions per the agreement.

### B. *Contested Probation Violation*

Defendant was arrested on July 25, 2008, after cocaine base weighing 30.67 grams was found in a probation search of his apartment. The district attorney moved for an order revoking defendant's probation. Probation was administratively revoked and defendant was remanded into the sheriff's custody pending a probation revocation hearing. At the revocation hearing on December 5, 2008, by stipulation, the People submitted their case-in-chief on the transcript of a preliminary hearing and reserved the right to call rebuttal witnesses.

On July 25, 2008, at 2:24 a.m., San Francisco Police Officer Antonio Carrasco and his partner, Officer Christopher Cotter, stopped their patrol car at the Neil Hotel on Mission Street. They approached defendant, who was with two other individuals, told him he was loitering, and asked if he was on probation or parole. Defendant told the officers he had a probation search condition, which the officers confirmed by performing a records check. Defendant also had a probation condition not to loiter in that area, which was notorious for cocaine base sales. Carrasco searched defendant's person and found nothing. Carrasco asked him why he was in the area, and defendant told him he lived at the Neil Hotel.

The officers accompanied defendant to a room in the hotel, which he confirmed was his, and he produced a key to the room. In a probation search of the room the officers found a black bag containing three rocks weighing 30.67 grams, which later tested positive for cocaine base. When the drugs were found, Carrasco turned to defendant and asked, " 'Is this yours?' " Defendant responded, " 'Yes. They are.' " Defendant's girlfriend, Latenia Johnson, was in the room when police got there, but she was not questioned about the drugs.

Officer Cotter later read defendant his rights under *Miranda* at the police station, at which time he declined to make a statement. The magistrate overruled defendant's *Miranda* objection to Carrasco's testimony that he had admitted the narcotics were his. Defendant was held to answer on charges of felony possession of cocaine base for sale and misdemeanor contempt of a stay-away order. These criminal charges were ultimately dismissed after the prosecution elected to proceed only on the revocation motion.

The defense called Latenia Johnson at the revocation hearing. She invoked her Fifth Amendment right not to incriminate herself. The People and the court declined to grant her immunity from prosecution based on her testimony, and the court sustained her invocation of the privilege.

Defendant testified somebody had asked him for a cigarette as he was returning home from the store on the night in question. At that moment, the police arrived, jumped out of their vehicle, and proceeded to question him. He explained that his probation conditions included a "walk-through . . . between 16th and 17th" Avenue, and that he was on his way inside his hotel where he lived when the police detained him. They handcuffed him, went through his pockets, and took him upstairs to his room where Johnson had been waiting for at least an hour while he was on his run to the store. She already had the door open when they arrived at his room.

The police ordered Johnson to "put [her] stuff down and step out [of] the room." Defendant told the officers, "She doesn't live here with me," but they insisted she step out of the room. Defendant watched as the police searched his room, including Johnson's purse that she left on top of the bed. Defendant testified they found some money and drugs in the purse, as well as a crack pipe, two lighters, and some single baggies. According to defendant, the police counted the money out and told him it was about $800 to $900. They kept asking him whose room it was, and whose money and drugs were in the purse. Defendant denied ever telling police the drugs were his. He remained in handcuffs during the questioning.

In rebuttal, Officer Cotter testified "a lot" of money was found in Johnson's purse. However, the drugs were found in a smaller black pouch, which the officers searched on the bed after seizing it from beneath the sink in the room. The officers showed the drugs to defendant, and asked him who they belonged to. He said, "They are mine." Cotter confirmed defendant was later given a *Miranda* admonition, and declined to give a statement at that time.

## C.   *The Trial Court's Rulings*

At the conclusion of the revocation hearing, the court considered defendant's *Miranda* objection to the testimony that he admitted the drugs were his, which had been interposed following his testimony. The court agreed with defendant's claim he was in custody before he made the asserted admission, and should have been admonished earlier. It nonetheless found the *Miranda* objection was inapplicable in the revocation proceeding because the testimony did not establish "a scenario that shocks the conscience."

The court found no loitering violation, but did find a probation violation based on the 30.67 grams of cocaine base found in the room: "[H]aving read the preliminary hearing transcript in this case which had Officer Carrasco's testimony with regard to the incident and having heard the evidence today and operating, as I must, on the preponderance-of-evidence standard . . . , I do find that by preponderance of the evidence, that this defendant is in violation of his probation. . . . [¶] . . . I think the fact of the 30 grams of cocaine in the room that he admits is his room, that they have evidence is his room, and given his statements and given the circumstances of this, I think that the drugs in that room is sufficient to be a violation of the probation."

## D.   *Sentencing and Appeal*

The court sentenced defendant to a four-year state prison term in superior court case No. 202772 and to a concurrent two-year prison term in superior court case No. 203741. These timely appeals followed. On defendant's motion, we have consolidated the appeals for purposes of briefing, oral argument, and decision.

## II. DISCUSSION

Defendant contends the trial court prejudicially erred in determining the officers' *Miranda* violation did not compel the exclusion of the testimony that he admitted the drugs belonged to him. We reject defendant's position on two grounds. First, the exclusionary remedy for a *Miranda* violation applies in criminal trials, but not in probation revocation proceedings under both California and federal law. Second, defendant failed in any event to meet his burden of demonstrating the asserted *Miranda* error was prejudicial.

### A. *Applicable Legal Standards*

■ Article I, section 28 of the California Constitution, enacted by initiative in June 1982, provides in relevant part as follows: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, *including pretrial and post conviction motions and hearings . . . .*" (Cal. Const., art. I, § 28, subd. (f)(2), italics added.) This provision "was intended to permit [the] exclusion of relevant, but unlawfully obtained evidence, *only if exclusion is required by the United States Constitution.*" (*In re Lance W.* (1985) 37 Cal.3d 873, 890 [210 Cal.Rptr. 631, 694 P.2d 744], italics added (*Lance W.*).) Thus, under Proposition 8, "[F]ederal constitutional standards govern review of issues related to the suppression of evidence seized by the police." (*People v. Rege* (2005) 130 Cal.App.4th 1584, 1588 [30 Cal.Rptr.3d 922].) Absent statutory authorization, no evidence may be excluded as a remedy for a Fifth Amendment violation unless its exclusion is compelled by federal law. (See *People v. May* (1988) 44 Cal.3d 309, 316 [243 Cal.Rptr. 369, 748 P.2d 307].)

In addressing particular issues arising under Proposition 8, we look to federal constitutional standards as interpreted by the United States Supreme Court. (*People v. Camacho* (2000) 23 Cal.4th 824, 830 [98 Cal.Rptr.2d 232, 3 P.3d 878].) Decisions of federal district or appellate courts are not binding on us in the absence of a United States Supreme Court decision that is on point. (*People v. Rooney* (1985) 175 Cal.App.3d 634, 644 [221 Cal.Rptr. 49].) In determining federal law in the absence of a definitive United States Supreme Court decision, we are bound by California Supreme Court cases construing federal constitutional provisions. (*Ibid.*) If there is no conflict between state and federal law, state law governs. (*Lance W., supra*, 37 Cal.3d at pp. 886–888.)

Federal *Miranda* error, if any occurred, is subject to harmless error analysis in accordance with *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] (*Chapman*). (*Arizona v. Fulminante* (1991) 499 U.S. 279,

307–312 [113 L.Ed.2d 302, 111 S.Ct. 1246].) Defendant has the burden of demonstrating there is a reasonable doubt about whether, but for the error, the trial court would have found by a preponderance of the evidence he violated his probation. (*Chapman, supra,* 386 U.S. at p. 24; *People v. Rodriguez* (1990) 51 Cal.3d 437, 441 [272 Cal.Rptr. 613, 795 P.2d 783].)

## B.  *Admissibility of Defendant's Admission*

In *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734] (*Martinez*),[1] the California Supreme Court addressed the issue of whether the Adult Authority, in proceedings to revoke a defendant's parole, could consider "a confession obtained through interrogation when [the] defendant has not been adequately apprised of his constitutional rights." (1 Cal.3d at p. 646.) Examining both the policy underlying the *Dorado-Miranda* exclusion rules[2] and the purposes and nature of parole revocation proceedings, the court held the Adult Authority *could* properly consider the confession. (*Martinez,* at pp. 648–650.)

The *Martinez* court noted the remedy of excluding confessions obtained without proper warnings served the dual purposes of preventing the use of confessions that might not be the product of free will, and of deterring police from engaging in coercive practices. (*Martinez, supra,* 1 Cal.3d at pp. 648–649.) However, the court found the issues at stake in parole revocation proceedings were sufficiently distinct from criminal law enforcement that the added deterrent effect of making the *Miranda* exclusionary rule applicable to them was not worth the cost to the public: "[A]n agency whose delicate duty is to decide when a convicted offender can be safely allowed to return to and remain in society is in a different posture than the court which decides his original guilt. To blind the authority to relevant facts in this special context is to incur a risk of danger to the public which, at least as of this date, outweighs the competing considerations of a problematical gain in deterrence." (*Martinez,* at p. 650.) Nonetheless, the court suggested that if the confession was shown to have been involuntary or coerced, the result might be different. (*Id.* at pp. 650–651.)

*Martinez* addressed both illegally obtained confessions and evidence obtained from searches violating the Fourth Amendment, finding both were

---

[1] *Martinez* was disapproved on another ground in *In re Tyrell J.* (1994) 8 Cal.4th 68, 88–89 [32 Cal.Rptr.2d 33, 876 P.2d 519].

[2] In *People v. Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361] (*Dorado*) (overruled on another point in *People v. Cahill* (1993) 5 Cal.4th 478, 509–510 [20 Cal.Rptr.2d 582, 853 P.2d 1037])—a case based on federal constitutional law predating *Miranda*—the California Supreme Court held that incriminating statements elicited from a suspect without advising him of his rights to counsel and to remain silent could not be introduced in his criminal trial. (*Dorado, supra,* 62 Cal.2d at p. 353.)

admissible in parole revocation proceedings. (*Martinez, supra,* 1 Cal.3d at pp. 648–650.) *People v. Hayko* (1970) 7 Cal.App.3d 604 [86 Cal.Rptr. 726] (*Hayko*) extended *Martinez*'s holding regarding the Fourth Amendment exclusionary rule to probation revocation proceedings, finding parole and probation revocation were equivalent for purposes of determining the rule's applicability. (*Hayko,* at p. 610.) Picking up on *Martinez*'s discussion of circumstances in which police conduct might be so egregious that the exclusionary rule should apply even to revocation proceedings, *Hayko* summarized the test as being whether the evidence was obtained by conduct that would " 'shock the conscience.' " (*Hayko, supra,* 7 Cal.App.3d at p. 610.)

The continued vitality of *Martinez* and *Hayko* was reaffirmed in *People v. Harrison* (1988) 199 Cal.App.3d 803 [245 Cal.Rptr. 204] (*Harrison*), a post-Proposition 8 decision rendered by another division of this court. Like *Hayko,* *Harrison* involved the application of Fourth Amendment principles in a probation revocation proceeding. (199 Cal.App.3d at p. 808.) Applying the analysis prescribed by Proposition 8, *Harrison* held federal law "does not require application of the exclusionary rule to probation revocation hearings." (199 Cal.App.3d at p. 811.) The court found support for that conclusion in decisions of both the United States and California Supreme Courts. (*Id.* at pp. 808, 810–812.)

■ The *Harrison* court discussed *Morrissey v. Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] (*Morrissey*), which held that state parole revocations required the observance of certain specified minimal due process requirements, including the holding of an informal factual hearing. The due process procedures specified included written notice of the parole violations alleged, an opportunity to be heard and present witnesses, and a written decision by a neutral parole board. (*Id.* at pp. 488–489.) The list did not include the exclusion of unwarned admissions by the parolee. As *Harrison* points out, *Morrissey* did not equate parole revocation hearings with criminal prosecutions in any sense, and the court left it to the states to determine flexible procedural rules for implementing its minimal due process requirements. (*Harrison, supra,* 199 Cal.App.3d at p. 809, citing *Morrissey, supra,* 408 U.S. at p. 489.) In fact, *Morrissey* stated the parole revocation process "should be flexible enough to consider evidence . . . *that would not be admissible in an adversary criminal trial.*" (*Morrissey,* at p. 489, italics added.) The year after *Morrissey* was decided, the United States Supreme Court held in *Gagnon v. Scarpelli* (1973) 411 U.S. 778 [36 L.Ed.2d 656, 93 S.Ct. 1756] that probation revocation was indistinguishable from parole revocation in terms of the requirements of due process. (*Id.* at p. 782.)

*Harrison* also pointed to *In re Coughlin* (1976) 16 Cal.3d 52 [127 Cal.Rptr. 337, 545 P.2d 249], which allowed trial courts in probation revocation cases

to consider evidence of a criminal charge for which the defendant had been acquitted. (*Id.* at p. 54.) The court held "the interest of society in preventing a premature release of the offender from confinement" requires that the court in such proceedings be able to "examin[e] *all* the available evidence [in order to] exercise the informed discretion which the Legislature has conferred upon it." (*Ibid.*)

Further support for the proposition that federal law does not require application of the *Miranda* exclusionary rule in probation revocation hearings can be found in *Minnesota v. Murphy* (1984) 465 U.S. 420 [79 L.Ed.2d 409, 104 S.Ct. 1136] (*Murphy*). The issue addressed in *Murphy* was "whether a statement made by a probationer to his probation officer without prior [*Miranda*] warnings is admissible in a subsequent criminal proceeding." (*Id.* at p. 425.) The court observed that if such statements are compelled, they would be "inadmissible *in a subsequent trial for a crime other than that for which he has been convicted.*" (*Id.* at p. 426, italics added.) Since the probationer in the case before it had not been in custody when he made the statements, and was not otherwise under compulsion, the court held there was no *Miranda* violation. (*Murphy*, at pp. 430–434.) The significance of *Murphy* for our purposes, however, is the court's assertion that the *Miranda* exclusionary rule would protect a probationer from the use of his unwarned statements *only* in an ensuing trial on criminal charges other than those for which he had been convicted—impliedly excluding its application in a proceeding to revoke his probation.

This impression is reinforced by the *Murphy* court's observation that a probationer would have no Fifth Amendment privilege to refuse to answer questions if his responses could only be used to revoke his probation: "The situation would be different if the questions put to a probationer were relevant to his probationary status and posed no realistic threat of incrimination in a separate criminal proceeding. If, for example, a residential restriction were imposed as a condition of probation, it would appear unlikely that a violation of that condition would be a criminal act. Hence, a claim of the Fifth Amendment privilege in response to questions relating to a residential condition could not validly rest on the ground that the answer might be used to incriminate if the probationer was tried for another crime. Neither, in our view, would the privilege be available on the ground that answering such questions might reveal a violation of the residential requirement and result in the termination of probation. Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding." (*Murphy, supra*, 465 U.S. at p. 435, fn. 7.) It is noteworthy that the *Murphy* court cites with approval in this footnote the Fifth Circuit's decision in *U.S. v. Johnson* (5th Cir. 1972) 455 F.2d 932, certiorari denied *sub nomine Johnson v. U.S.*

(1972) 409 U.S. 856 [34 L.Ed.2d 101, 93 S.Ct. 136], a case squarely holding the *Miranda* exclusionary rule has no application in probation revocation proceedings.

Finally, the limitation on the *Miranda* exclusionary rule impliedly recognized in *Murphy* flows from the relevant text of the Fifth Amendment itself, which the Supreme Court quoted at the outset of its analysis: "[N]o person 'shall be compelled *in any criminal case* to be a witness against himself.' " (*Murphy, supra,* 465 U.S. at p. 426, italics added.) As the *Murphy* court reiterated, probation revocation proceedings are not criminal prosecutions. (*Id.* at p. 435, fn. 7; *People v. Johnson* (2004) 121 Cal.App.4th 1409, 1411 [18 Cal.Rptr.3d 230].)

Without elaboration, defendant argues that more recent Supreme Court cases affirming *Miranda* warnings are of constitutional dimension, such as *Dickerson v. United States* (2000) 530 U.S. 428 [147 L.Ed.2d 405, 120 S.Ct. 2326] and *Florida v. Powell* (2010) 559 U.S. ___ [175 L.Ed.2d 1009, 130 S.Ct. 1195], throw *Martinez, Hayko,* and *Harrison* into doubt. We are not persuaded. It does not follow from the fact that specified preinterrogation *Miranda* warnings are required by the United States Constitution, and may not be legislatively superseded, that a statement obtained in violation of *Miranda* must be suppressed in a probation revocation proceeding. *Dickerson* and *Powell* involved the issue of whether the *warnings themselves* were constitutionally required, not whether or in what circumstances the *remedy* of excluding evidence obtained in violation of *Miranda* was constitutionally required.

Defendant also cites two federal cases addressing whether the Fifth Amendment permits convicted sex offenders to be threatened with incarceration or loss of privileges if they refuse to cooperate with sexual abuse treatment programs that require them to make potentially incriminating admissions. (See *McKune v. Lile* (2002) 536 U.S. 24 [153 L.Ed.2d 47, 122 S.Ct. 2017]; *U.S. v. Antelope* (9th Cir. 2005) 395 F.3d 1128.) These cases merely define the circumstances in which rehabilitative programs may or may not be deemed coercive for Fifth Amendment purposes; they do not in any way suggest or imply that the *Miranda* exclusionary rule applies in a probation revocation proceeding.

In sum, we find no inconsistency between federal law and state law on the issue before us—whether unwarned admissions made by an in-custody defendant may be considered in an ensuing probation revocation proceeding in the absence of egregious conduct by law enforcement. Such evidence is admissible under article I, section 28, subdivision (f)(2) of the California Constitution, as well as *Martinez,* and the trial court here committed no error or abuse of discretion by so ruling.

C. *Prejudice*

Even assuming for the sake of analysis that the trial court erred in considering the officer testimony in issue, defendant had the burden of demonstrating the assumed error was prejudicial under the *Chapman* standard. (*Arizona v. Fulminante, supra,* 499 U.S. at pp. 307–312.) Defendant makes no argument addressing that issue beyond quoting in bold lettering the court's mention of defendant's statements as one factor among others explaining its decision. Since defendant has waived an issue on which he carried the burden of proof, the appeal fails without regard to whether any trial court error occurred. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481].)

Moreover, even assuming the claim of prejudice was properly preserved for appellate review, we would find against defendant's position on the merits. In our view, beyond a reasonable doubt, defendant would not have obtained a more favorable result had the trial court excluded the officers' testimony concerning his unwarned admission. Setting the asserted admission aside, the officers' testimony that they found the cocaine base in a pouch under the sink in defendant's residence hotel room—if believed by the court—was sufficient in itself to establish a probation violation by a preponderance of the evidence.[3] Whether the court accepted the officers' testimony about where they found the drugs boiled down to a straightforward question of credibility. Only one other explanation was offered as to where the drugs seized that night had come from—defendant's claim that the police found them in his girlfriend's purse. To decide whether defendant violated his probation, the court had to choose which of these contradictory versions it was going to believe. Many factors might have logically influenced the court's choice,[4] but the essential point for present purposes is that the officers' further testimony about defendant's alleged admission was not one of them. That testimony added nothing to the credibility of the officers' account of where the drugs were found. If anything, the claim that defendant admitted the drugs were his tended to diminish the officers' credibility. The court might well have considered it improbable that a person with defendant's level of experience in the criminal justice system, and such an obvious motive to disclaim knowledge of the drugs, would so readily admit the drugs belonged to him. In any event, it is difficult to see how the officers'

---

[3] Other relevant evidence includes (1) defendant' testimony that his girlfriend did not live in the room, and had only been there a couple of times and (2) Officer Carrasco's testimony that defendant was loitering outside at 2:24 a.m. in an area notorious for drug sales.

[4] Significant factors logically relevant to the court's credibility determination include (1) its assessment of defendant's and Cotter's demeanor; (2) defendant's felony convictions; and (3) the fact that defendant had an obvious motive to shift blame to avoid prison, whereas the officers would have had no apparent reason for failing to arrest and charge defendant's girlfriend if they had actually found drugs in her purse.

credibility was in any way *enhanced* by this testimony, which defendant strongly denied at the revocation hearing.

Since the challenged testimony was not necessary to meet the prosecution's burden of proof, and could not have influenced the court's decision to accept the officers' account of where the drugs were found, its admission was harmless under *Chapman.*

## III. DISPOSITION

The judgment is affirmed.

Marchiano, P. J., and Banke, J., concurred.