93 Cal.Rptr.2d 607 (2000)
78 Cal.App.4th 1242
The PEOPLE, Plaintiff and Respondent,
v.
Kevin Bryan SPENCE, Defendant and Appellant.
No. C028033.
Court of Appeal, Third District.
March 10, 2000.
As Modified on Denial of Rehearing April 10, 2000.
Review Granted July 12, 2000.
*608 Todd D. Riebe, Madera, and Colin J. Heran, Sacramento, under appointments by the Court of Appeal, for Defendant and Appellant.
Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Robert Anderson, Senior Assistant Attorney General, Stan Cross and Alison Elle Aleman, Deputy Attorneys General for Plaintiff and Respondent.
MORRISON, J.
This case presents the question whether the exclusionary rule should apply to a probation search conducted by police officers in reliance on a probation roster that was designed to omit information concerning judicially imposed limitations on the authority to conduct a probation search.
In reliance on a computer generated probation roster that told law enforcement that an individual was on probation and if he was subject to a search condition, but did not indicate any limitations on the right to search, police officers looking for drugs, conducted a probation search of the defendant's residence. The defendant was on searchable probation, but the right to search was limited to a search for stolen property.
A judge may grant probation conditioned on the defendant's consent to warrantless searches. On occasion, a judge may limit the scope of the defendant's consent to searches for particular contraband, such as drugs or stolen property. Here, the defendant consented solely to searches for stolen property as a condition of his probation. The probation department provided to a law enforcement agency a computer generated roster of probationers subject to search conditions. The roster was.designed to omit any limitations on the scope of the probationer's consent, and thus did not reflect that the scope of the defendant's consent, in this case, was *609 limited to searches for stolen property. Relying on this incomplete roster, police officers searched the defendant's residence for drugs, believing the defendant's consent was without limitation.
The Attorney General argues that this case involves the good faith exception to the application of the exclusionary rule, but Law enforcement agencies may not rely in good faith on information conveyed to them in a report designed to omit a judge imposed limitation on the scope of a probation search. The good faith exception does not permit reliance on the "objectively reasonable" belief of individual police officers when law enforcement agencies have knowledge of flaws in their record keeping and reporting systems. (See People v. Downing (1995) 33 Cal.App.4th 1641, fn. 26, 1657, 40 Cal.Rptr.2d 176.)

FACTUAL AND PROCEDURAL
BACKGROUND
Defendant Kevin Bryan Spence was convicted of auto theft in 1994 and was placed on probation
In 1996, a petition was filed alleging he failed to obey all laws in that he possessed drug paraphernalia and a controlled substance. His motion to suppress evidence was denied, and the petition's allegations were found true.
Defendant was sentenced to state prison for two years. Execution of sentence was suspended and he was reinstated on probation on the condition, among others, that he serve 365 days of incarceration.
On appeal, defendant contends his suppression motion should have been granted because the search of his residence for drugs was not authorized by the probation search condition which was limited to searches for evidence of theft. He is correct.
On January 23, 1996, Woodland Police Officers Matthew Sears and Steven Gill conducted a probation search of defendant's residence. Prior to the search, Sears had obtained information that defendant was on probation with a search condition. The source of the information was a computer-generated roster prepared by the clerical staff of the Yolo County Probation Department and furnished to the Woodland Police Department. Sears either viewed the roster personally or obtained the information from a police department employee. Before conducting the search, Sears verified the information with the Probation Department and with defendant himself.
Officer Sears testified that he searched defendant's residence primarily for narcotics. The officers found drug paraphernalia and a small amount of methamphetamine in defendant's bedroom.
The probation roster did not reflect the limitation on the search condition, and the probation department has no procedure for including such information in its roster. If a probationer has any type of search condition, the roster so indicates by a numeric code or it will simply say "search". The numeric code is known by the police agencies that receive the roster. The absence of any indication that defendant was on "searchable probation for stolen property only" was "not a clerical error." Rather, the omission was "what happens usually" under the system used by the police and probation departments.
Defendant did not mention the search limitation when the officers questioned him about his probation status.

DISCUSSION
Defendant contends the probation search violated his Fourth Amendment rights because it was conducted without a warrant pursuant to a narrowly drawn search condition that did not encompass a search for narcotics. (People v. Howard (1984) 162 Cal.App.3d 8, 13, 208 Cal.Rptr. 353; cf. People v. Ramirez (1983) 34 Cal.3d 541, 552, 194 Cal.Rptr. 454, 668 P.2d 761.) We agree.
"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or *610 implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (People v. Glaser (1995) 11 Cal.4th 354, 362, 45 Cal.Rptr.2d 425, 902 P.2d 729.)
"An adult probationer consents to a waiver of his Fourth Amendment rights in exchange for the opportunity to avoid serving a state prison sentence. [Citation.] '"[W]hen [a] defendant in order to obtain probation specifically [agrees] to permit at any time a warrantless search of his person, car and house, he voluntarily [waives] whatever claim of privacy he might otherwise have had."'" (People v. Reyes (1998) 19 Cal.4th 743, 749, 80 Cal. Rptr.2d 734, 968 P.2d 445, quoting People v. Bravo (1987) 43 Cal.3d 600, 607, 238 Cal.Rptr. 282, 738 P.2d 336.) The consent is a complete waiver of the defendant's Fourth Amendment rights, save only his right to object to searches conducted for harassment or in an unreasonable manner. (People v. Reyes, supra, at pp. 753-754, 80 Cal.Rptr.2d 734, 968 P.2d 445.) For present purposes, a search is conducted in an unreasonable manner if it exceeds the scope of the probationer's consent as articulated in the search clause. (People v. Woods (1999) 21 Cal.4th 668, 681, 88 Cal. Rptr.2d 88, 981 P.2d 1019.) "[W]hether the purpose of the search is to monitor the probationer or to serve some other law enforcement purpose, or both, the search in any case remains limited in scope to the terms articulated in the search clause." (Ibid; Bravo, supra, at pp. 605, 607, 238 Cal.Rptr. 282, 738 P.2d 336.)
Defendant claims the search exceeded the scope of his consent because the search clause authorized searches "for stolen property" but not searches "[p]rimarily for drugs."[1] The phrase "for stolen property" places both spatial and volitional limitations upon warrantless searches: it limits them to places where stolen property is likely to be found,[2] and to searchers who subjectively intend to search for stolen property.[3] Defendant argues the scope of his consent was exceeded because the officers subjectively intended to search "primarily" for drugs that had not necessarily been stolen.
The People do not refute defendant's contention regarding the officers' subjective intent. Nor do they identify facts demonstrating that the warrantless search of his residence was objectively reasonable, regardless of the officers' subjective intent, because of evidence of observed narcotics activity or otherwise. (Cf. People v. Woods, supra, 21 Cal.4th 668, 88 Cal. Rptr.2d 88, 981 P.2d 1019 [search of probationer's residence was objectively reasonable based on evidence that drugs were being sold out of her house, regardless of the officer's subjective intent to investigate the probationer's boyfriend].) Finding no objectively reasonable basis for the warrantless *611 search, we conclude it was unreasonable under the Fourth Amendment.
The People contend the good faith exception to the exclusionary rule (United States v. Leon (1984) 468 U.S. 897, 906, 104 S.Ct. 3405, 3411, 82 L.Ed.2d 677, 687) applies because the searching officers relied upon the probation roster, "a judicial document that on its face authorized a generalized probation search."[4] (Original italics.) We disagree.
The issue of police reliance on outside sources of information for authority to conduct a search or seizure has arisen in a variety of contexts. In the pre-Leon case of People v. Tellez (1982) 128 Cal.App.3d 876, 180 Cal.Rptr. 579, the defendant's parole agent told the searching officer that the defendant was then on parole. It was later judicially determined that a statute extending periods of parole could not be applied retroactively to the defendant. Nevertheless, suppression of evidence found in the warrantless search was held to be unnecessary because the searching officer had no basis to question the information provided by the parole agent. (At pp. 879-881, 180 Cal.Rptr. 579.)
In People v. Ramirez (1983) 34 Cal.3d 541, 194 Cal.Rptr. 454, 668 P.2d 761 an officer arrested the defendant based on his dispatcher's advisement that the police department's computer indicated the existence of an outstanding arrest warrant. In fact, the warrant had been recalled six months earlier. (At pp. 543-544, 194 Cal. Rptr. 454, 668 P.2d 761.) The court held that "an arrest based solely on a recalled warrant is made without probable cause," and that, "[although in this case the arresting officer no doubt acted in good faith reliance on the information communicated to him through `official channels,' law enforcement officials are collectively responsible for keeping those channels free of outdated, incomplete, and inaccurate warrant information. That the police now rely on elaborate computerized data processing systems to catalogue and dispatch incriminating information enhances rather than diminishes that responsibility." (At p. 552, 194 Cal.Rptr. 454, 668 P.2d 761.)
In Arizona v. Evans (1995) 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 a court clerk evidently failed to inform a police department that a warrant for the defendant's arrest had been quashed. (At p. 5, 115 S.Ct. 1185.) As a result, the warrant appeared in the police computer. Applying United States v. Leon, supra, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 the United States Supreme Court refused to suppress the fruits of the defendant's arrest, reasoning that "[i]f court employees were responsible for the erroneous computer record, the exclusion of evidence at trial would not sufficiently deter future errors so as to warrant such a severe sanction." (Arizona v. Evans, supra, at p. 14, 115 S.Ct. 1185.) The court explained that "there is no basis for believing that application of the exclusionary rule in these circumstances will have a significant effect on court employees responsible for informing the police that a warrant has been quashed. Because court clerks are not adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime, [citation], they have no stake in the outcome of particular criminal prosecutions. [Citations.] The threat of exclusion of evidence could not be expected to deter such individuals from failing to inform police officials that a warrant had been quashed. [Citations.]" (At p. 15, 115 S.Ct. 1185.)
Arizona v. Evans, supra, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 was followed in People v. Downing, supra, 33 Cal.App.4th 1641, 40 Cal.Rptr.2d 176, in which a superior court clerk's entry of erroneous information into a county computer caused the police to believe the defendant was subject *612 to a probation search clause. (At pp. 1645-1648, 40 Cal.Rptr.2d 176.) Downing concluded that police reliance on computer generated data from the judicial system was not the result of police misconduct or error, and thus evidence obtained by police acting in "objectively reasonable good faith" would not be suppressed. (At p. 1657, 40 Cal.Rptr.2d 176.)
In In re Arron C. (1997) 59 Cal.App.4th 1365, 69 Cal.Rptr.2d 852, the probation department's computer showed that the defendant was subject to a search condition that had, in fact, expired. (At p. 1368, 69 Cal.Rptr.2d 852.) The reason for the error was not explained. A probation officer conveyed the erroneous information to the searching police officer. Applying Arizona v. Evans, supra, 514 U.S. 1,115 S.Ct. 1185, 131 L.Ed.2d 34, United States v. Leon, supra, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, People v. Downing, supra, 33 Cal.App.4th 1641, 40 Cal.Rptr.2d 176, and People v. Tellez, supra, 128 Cal.App.3d 876, 180 Cal.Rptr. 579, the majority refused to suppress the evidence. The majority effectively concluded that the probation officer was the source of the error, and reasoned that such officers are analogous to the court employees in Evans who ordinarily have no stake in the outcome of particular criminal prosecutions and for whom the threat of suppression of evidence holds no particular deterrent. (In re Arron C., supra, at p. 1371, 69 Cal. Rptr.2d 852.)
The present case is not like Arizona v. Evans, supra, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34, In re Arron C., supra, 59 Cal.App.4th 1365, 69 Cal.Rptr.2d 852, People v. Downing, supra, 33 Cal.App.4th 1641, 40 Cal.Rptr.2d 176, or People v. Tellez, supra, 128 Cal.App.3d 876, 180 Cal. Rptr. 579, because it does not involve a mistake by a court or probation department employee. (See Evans, supra, at p. 16, 115 S.Ct. 1185 [conc. opn. of O'Connor, J.].) In this case the system, as designed, performed perfectly. It gave the officers the incomplete data that it was designed to give. Nothing in the record suggests the system's design was, itself, a mistake, as opposed to a conscious decision or series of decisions.
Thus, we do not confront the issue addressed in Arizona v. Evans, supra, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34, In re Arron C., supra, 59 Cal.App.4th 1365, 69 Cal.Rptr.2d 852, People v. Downing, supra, 33 Cal.App.4th 1641, 40 Cal.Rptr.2d 176, or People v. Tellez, supra, 128 Cal. App.3d 876, 180 Cal.Rptr. 579, of whether the threat of exclusion of evidence can deter employees with no stake in the outcome of particular cases from making similar mistakes in the future. As Evans, Arron C., Downing and Tellez suggest, deterrence of future mistakes (as opposed to deliberate conduct) is often problematical, and rarely more so than when the sting of the deterrent falls upon persons other than those sought to be deterred.
Here, however, what is sought to be deterred is intentional reliance upon a flawed system that will continue to deliver incomplete data in every probation search case until it is appropriately modified.[5] Exclusion of evidence is ordinarily employed as a deterrent to intentional conduct, and nothing in the record suggests it will not have the desired effect in this case.
Moreover, the persons sought to be deterred are not only those responsible for maintaining the present system (presumably court or probation employees), but also those law enforcement officers throughout Yolo County who rely on the probation roster, despite its inadequacy, without supplementing it with sufficient additional information. As we have noted, law enforcement officials are collectively responsible for keeping official channels free of outdated, incomplete, and inaccurate warrant information. (People v. Ramirez, supra, 34 Cal.3d at p. 552, 194 Cal.Rptr. 454, 668 P.2d 761; In re Arron C., supra, 59 Cal.App.4th at p. 1369, 69 Cal.Rptr.2d 852.) Law enforcement thus *613 has a collective responsibility to avoid exclusive reliance on the probation roster, as presently constituted, to determine the scope of probation search clauses. The deterrent effect of suppression of evidence is appropriately focused on law enforcement which has the means to verify the scope of a probationer's consent.
In her concurring opinion in Arizona v. Evans, supra, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34, Justice O'Connor noted that "In recent years, we have witnessed the advent of powerful, computer-based recordkeeping systems that facilitate arrests in ways that have never before been possible. The police, of course, are entitled to enjoy the substantial advantages this technology confers. They may not, however, rely on it blindly. With the benefits of more efficient law enforcement mechanisms comes the burden of corresponding constitutional responsibilities." (Id. at pp. 17-18, 115 S.Ct. 1185.)
Law enforcement bears the responsibility of ensuring that information in the probation roster is substantially complete, or is adequately supplemented. In this case, that responsibility was not fulfilled. The good faith exception to the exclusionary rule does not permit admission of the evidence seized in the probation search. The motion to suppress should have been granted.
In a petition for rehearing, the Attorney General contends for the first time that the exclusionary rule should not be applied to probation revocation proceedings. The contention is not properly before us because it was not raised in the trial court or in the respondent's brief. (People v. Whitson (1998) 17 Cal.4th 229, 244, fn. 4, 70 Cal.Rptr.2d 321, 949 P.2d 18.)
If the Attorney General's contention were properly before us, we would conclude it has no merit. The rationale for refusing to apply the exclusionary rule to probation revocation proceedings is the lack of any "incremental deterrent effect that will realistically be achieved" by excluding the evidence. (In re Martinez (1970) 1 Cal.3d 641, 649, 83 Cal.Rptr. 382, 463 P.2d 734 [parole revocation hearing]; Pa. Bd. of Parole v. Scott (1998) 524 U.S. 357, 364, 118 S.Ct. 2014, 141 L.Ed.2d 344 [same]; People v. Harrison (1988) 199 Cal. App.3d 803, 811, 245 Cal.Rptr. 204 [probation revocation hearing]; People v. Nixon (1982) 131 Cal.App.3d 687, 691, 183 Cal. Rptr. 878 [same]; see People v. Reyes, supra, 19 Cal.4th at pp. 755-756, 88 Cal. Rptr.2d 734, 968 P.2d 445.) Here, however, the incremental deterrent effect is substantial and the foregoing rationale does not apply.
The probation roster that was relied upon in this case had been consciously designed to omit the limitations that the sentencing judge had placed upon defendant's search condition. If court and probation officials are put on notice that reliance upon the roster in its present form will result in the exclusion of evidence, those officials will have a powerful incentive to redesign the probation roster. If the roster is redesigned, this case will have had a significant deterrent effect.

DISPOSITION
The judgment is reversed.
DAVIS, Acting P.J., and NICHOLSON, J., concur.
NOTES
[1] The probation order containing the search clause is not in the appellate record. We analyze the clause as it was read into the record at the suppression hearing.
[2] Defendant does not claim the officers exceeded a spatial limitation by searching places he did not intend to expose to official view. He does not argue the officers searched his stomach, body cavities or other places where stolen property was not likely to be found. Nor does the record suggest the officers searched any place defendant did not knowingly expose to official examination as a condition of avoiding a prison sentence. (People v. Reyes, supra, 19 Cal.4th at p. 749, 80 Cal.Rptr.2d 734, 968 P.2d 445.) The methamphetamine was found in defendant's bedroom, a place where stolen property could easily have been secreted.
[3] People v. Woods, supra, 21 Cal.4th 668, 88 Cal.Rptr.2d 88, 981 P.2d 1019, explains that the validity of a probation search ordinarily should not turn on the searching officer's subjective intent. (At pp. 680-681, 88 Cal. Rptr.2d 88, 981 P.2d 1019.) However, Woods acknowledges that a probation search "in any case remains limited in scope to the terms articulated in the search clause." (At p. 681, 88 Cal.Rptr.2d 88, 981 P.2d 1019.) In this case, the terms articulated in the search clause required a certain subjective intent. Woods does not invalidate the search clause, but it does counsel against obtaining probationers' consent to such clauses in future cases.
[4] The Attorney General describes the probation roster as a "judicial document." Although we need not decide this issue, it appears the Attorney General is correct. In most counties, chief probation officers are appointed by and serve at the pleasure of the court. (Pen. Code, §§ 1203.5, 1203.6; cf. Welf. & Inst. Code, § 270; see People ex rel. Deputy Sheriffs' Assn. v. County of Santa Clara (1996) 49 Cal.App.4th 1471, 1487, 57 Cal. Rptr.2d 322.)
[5] The system described at the suppression hearing delivers incomplete data in every probation/search case because it has no means of cautioning an officer that a particular search consent is qualified, or, conversely, of assuring the officer that the search consent is not qualified.