Filed 3/9/16  P. v. Zavaladiaz CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GUSTAVO ADOLFO ZAVALADIAZ,<br><br>    Defendant and Appellant. | B263966<br><br>(Los Angeles County<br>Super. Ct. No. YA088257) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Mark S. Arnold, Judge.  Affirmed as modified.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Viet H. Nguyen, Deputy Attorney General, for Plaintiff and Respondent.

Following a jury trial, defendant and appellant, Gustavo Adolfo Zavaladiaz, was convicted of three counts of committing a lewd act on a child (Pen. Code,[1] § 288, subd. (a); counts 1, 3, & 5), oral copulation with, or sexual penetration of, a child under the age of 10 (§ 288.7, subd. (b); count 2), and continuous sexual abuse of a child 10 years old or younger (§ 288.5, subd. (a); count 4). He was sentenced to the following consecutive terms: 15-years-to-life on counts 1, 2 and 5; six years on count 3, and 12 years on count 4.

Defendant argues his confession was improperly admitted into evidence because, when providing *Miranda* [2] advisements, the interrogating detective suggested defendant's entitlement to an attorney *at public expense* was limited to his in-court appearances rather than also including his post-arrest interview with the detective. He also contends the trial court was required to impose one-third of the midterm sentence on count 3. The Attorney General concedes the second point, and we accept that concession. However, the judgment is otherwise affirmed because, in light of the other convincing evidence pointing to defendant's guilt, any error in admitting the confession was harmless beyond a reasonable doubt.

## FACTS

In July 2012, defendant, his cousin F.Z., and F.Z's four children, lived with F.Z's mother. At times, defendant leered at F.Z.'s 11-year-old son, M.F., when the boy walked around the house in his underwear. Defendant touched M.F. on various areas of his body (buttocks, chest, thighs, genitals) on a daily basis. He watched as M.F. showered and used the restroom. Six months later, F.Z. and her family moved out of the house and into another home in the same area. Defendant moved in with them.

---

[1]  All further statutory references are to the Penal Code.

[2]  *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

The frequency and gravity of defendant's abuse increased when he lived in F.Z.'s home. Defendant forced M.F. to touch defendant's penis. On one occasion, M.F. woke to see defendant's "face and mouth" near M.F.'s penis—when the prosecutor asked M.F. to describe what defendant was doing, M.F. testified, "I can't remember exactly. I'm kind of trying to forget."

M.F. referred to defendant as "uncle." Defendant gave M.F. money and toys and in return M.F. "obey[ed]" defendant and allowed defendant to touch him. M.F. did not say anything to his siblings because he considered defendant to be an important figure in the family and wanted to protect him.

M.F's brother, E.Z, was eight years old when he was molested by defendant. On August 24, 2013, defendant inserted his finger into E.Z's anus. E.Z. wanted to run but could not do so because defendant had ahold of him. After he was violated, E.Z. went to the bathroom and, while he was examining his painful buttocks in the mirror, he accidently defecated in the sink. The accident made his mother angry which, in turn, caused E.Z. to tell her what defendant had done to him.

F.Z. called the police. Officers arrived and interviewed F.Z. and E.Z. Defendant and M.F. were at an amusement park at that time. The officers told F.Z. to call the police when defendant and M.F. returned, and then left F.Z.'s home.

When defendant arrived home, F.Z. confronted him. She explained: "I told him that, if you really did that to my kids, that he has to say the truth so you guys can help him. But if he didn't, I was gonna support him because he was my family. And then, he didn't say anything. He just stayed quiet."

F.Z. complied with the officers' request that they be contacted upon defendant's arrival. When the police returned to the home, M.F. informed an officer that he had been inappropriately touched by defendant. On direct examination, the prosecutor asked M.F., "Did you tell Deputy Rivera . . . that when you were in the bathroom urinating, the defendant looked over at your penis and asked for a pubic hair?" M.F. replied, "I think so." Deputy Rivera advised defendant of his *Miranda* rights. Defendant waived his

rights, and provided no specific information other than to say that he knew what he did was wrong. Defendant was arrested.

On August 26, 2013, Detective Liliana Becerra interviewed M.F. M.F. explained some of the mistreatment he suffered at the hands of defendant between July 2012 and August 2013. He said defendant, on separate occasions: reached his hand inside his underwear and grabbed M.F.'s penis; placed his mouth on the tip of his penis while M.F. was sleeping; undressed M.F; and watched M.F. shower. Defendant provided M.F. with candy and video games in exchange for M.F. allowing defendant to touch him. M.F. estimated he had been touched on 50-90 separate occasions during this 13-month period.

Later that day, Becerra met with defendant. At the time, defendant remained under arrest and was read his Miranda rights.[3] With respect to E.Z, defendant stated, "I haven't touched the boy." Defendant explained, "[he] never touched [E.Z.'s] rectum," however, he admitted he punished E.Z. for misbehaving by pinching his "butt cheeks."

Defendant admitted to touching M.F.'s penis, both over and under his clothes. Defendant stated, "One day . . . just fooling around, I grabbed him but over his clothes. I didn't put my hand inside. . . . I was joking, and afterwards I felt bad, and I told him to give me a little hair from his area. But I was joking." Defendant clarified that the area of M.Z. he grabbed was his penis.

Defendant explained he would walk in on M.F. in the bathroom where he sometimes he saw M.F. masturbate, and other times he placed his hand below M.F.'s hand and demonstrated how to stroke M.F.'s penis. Defendant entered M.F.'s bedroom on two occasions while M.F. was sleeping and touched M.F.'s penis. Defendant, while "joking" or "playing with" M.F. gave "little kisses" to M.F.'s penis, over M.F.'s clothing,. In response to the detective's question about whether he was "turned on" by touching M.F.'s penis, defendant said "Maybe, but it was never like with the intention of

---

[3]     People's Exhibit 1, a transcript of the interview, was admitted into evidence.

4

hurting [M.F.] . . .” He explained there were “many times” M.F. placed his hand underneath defendant's clothes and touched defendant's penis.

In response to the detective's question about whether there was anything defendant would like the detective to tell the boys, defendant replied: “I've already told him, I told him: ‘The times that I touched you, I didn't do it with bad intentions, but it's more about how much I love you.’”

## DISCUSSION

### A.    *Miranda*

#### 1.    The Advisement

Defendant received two sets of *Miranda* advisements—one on August 24, 2013 and the other on August 26, 2013. It is the latter set that defendant argues was inadequate. He maintains the detective improperly told defendant that he would have a right to cost-free counsel only when he reached court as opposed to when he was being questioned by the detective. This defect, he asserts, rendered the confession inadmissible and prejudiced his case to such a degree that reversal of the judgment is required.

The exchange between the detective and defendant occurred in Spanish. After defendant indicated he understood he had the right to remain silent and that his statements could be used against him in court, the following occurred:

“[DETECTIVE]    . . . You have the right to have an attorney present before and during questioning. Do you understand?

[DEFENDANT]    Yeah.

[DETECTIVE]    Yeah, does that mean yes or no?

[DEFENDANT]    Yeah.

[DETECTIVE]    Yes, okay. . . . [I]f you can't afford an attorney, one will be assigned to you before you are questioned. Do you understand?

5

[DEFENDANT]     No, I really don't.

[DETECTIVE]     No.  Okay.  Very well, as I said, if you don't understand I'll explain.  Okay?  This says that if you don't have funds —enough money, enough to pay for a lawyer—you will be automatically assigned one without worrying about needing —

[DEFENDANT]     [I]f I tell you right now that I don't have it, because I don't really have a stable job.

[DETECTIVE]     No, and that's fine.  This right says that if you don't have enough money to pay . . . for a lawyer they'll give you one anyway to represent you.  They won't leave you in court all by yourself.  Someone will be there to represent you, whether you have money or not.

[DEFENDANT]     Okay.

[DETECTIVE]     But as it says here, I'm going to read it to you again:  if you, financially cannot afford a lawyer one will be appointed to you before you are questioned.  Do you understand this question or should I explain it to you again?

[DEFENDANT]     Yes, please explain.

[DETECTIVE]     Okay, very well.  I'm going to say exactly the same thing but in a different way, okay?  If you don't have money to afford a lawyer they're still going to give you a lawyer to represent you in court.  They won't leave you there all alone, representing yourself in court, because you don't know about the law.  Whether you have money or not, someone will represent you.  That is what this question says:  if you don't have enough money you will be appointed a lawyer to defend you.

[DEFENDANT]     Okay.

[DETECTIVE]     Do you understand?

[DEFENDANT]     Yeah.

[DETECTIVE]     'Yeah' means . . .

[DEFENDANT]     Yes."

Defendant subsequently signed a *Miranda* form detailing his rights and indicating he understood the questions asked by the officer.[4] He then said he wanted to speak with the officer about "what happened."

The trial court denied defendant's motion to exclude the confession that followed these advisements. It cited several reasons for the ruling including: (1) the law permitted the detective to explain the rights in more detail when an accused expresses a lack of understanding; (2) two days earlier, with Rivera, defendant indicated he understood his rights thereby raising a concern about whether defendant was being honest when he expressed some misunderstanding of those same rights read to him by Becerra; (3) defendant was not subjected to any form of coercion; and (4) defendant was advised he had a right to have an attorney present during the interview.

2.      Analysis

In order to protect a suspect's Fifth Amendment rights, he "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney *one will be appointed for him prior to any questioning* if he so desires." (*Miranda v. Arizona*, *supra*, 384 U.S. at p. 479, italics added.) The trial court is required to assess "whether the Miranda waiver is shown by a preponderance of the evidence to be voluntary, knowing and intelligent under the totality of the circumstances surrounding the interrogation. [Citations.]" (*People v. Sauceda-Contreras* (2012) 55 Cal.4th 203, 219.) *Miranda* warnings "need not be presented in any 'precise formulation' or 'talismanic incantation.' [Citations.] 'Reviewing courts . . . need not examine Miranda warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably "conve[y] to [a suspect] his rights as required by Miranda."' [Citation.]" (*People v. Kelly* (1990) 51 Cal.3d 931, 948-949.)

---

[4]      The form is not included in the record on appeal.

7

We decline to address whether the advisements as a whole reasonably conveyed to defendant that he had the right to an attorney, at public expense, before and during questioning. This discussion is bypassed because it is clear the prejudicial impact attributable to the confession made to Becerra is insufficient to warrant reversal of the judgment. Accordingly, we resolve the issue against defendant based on the application of well-settled rules concerning the required prejudice for reversal of the judgment due to error under the Federal Constitution.

It is true that "[a] confession is like no other evidence. Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. . . . .'" (*Arizona v. Fulminante* (1991) 499 U.S. 279, 296.) Nonetheless, if a trial court erroneously admits a confession that was taken in violation of *Miranda,* the defendant is entitled to a reversal of the judgment only if the error was not harmless beyond a reasonable doubt. (*People v. Racklin* (2011) 195 Cal.App.4th 872, 877-878, citing *Arizona v. Fulminante* , *supra*, 499 U.S. at pp. 307-312 & *Chapman v. California* (1967) 386 U.S. 8, 24.)

Defendant maintains, without his statements to Becerra, there would have been inconsistencies in the testimony "in terms of the nature and frequency of the acts alleged." In support, defendant provides only one example: "[M.F.] did not testify that [defendant] orally copulated him; without [defendant's] statement about 'kissing' [M.F.'s] penis, there would [have been] insufficient evidence as to that allegation."

Although it is the People's burden to demonstrate a confession admitted in violation of *Miranda* was harmless (*People v. Elizalde* (2015) 61 Cal.4th 523, 542), we note defendant's interpretation of the record lends little support to his position regarding prejudice. M.F. did not exclude the possibility that defendant was orally copulating him; rather, he said he was not able to remember exactly what defendant was doing and, in fact, was "trying to forget" what happened. In any event, Becerra clarified defendant's conduct when she testified M.F. told Becerra that M.F. woke up to find defendant's

8

mouth "on the tip of [M.F.'s] penis." In light of this evidence, defendant's confession to "kissing" M.F.'s penis did not carry the powerful prejudice suggested by defendant.

It is quite clear from the record that this case turned on defendant's intent. In closing argument, defense counsel took the following approach: "Clearly, I don't think anyone in this room has a doubt that there was touching going on, and there was a lot of touching going on. [¶] The bottom line is this: Are you convinced that the touching happened with the intent to commit a lewd act? That's the bottom line. Let's [sic] me repeat that again. Clearly, there was touching going on in this case. Whether it's on the buttocks, the thigh, arm or chest. Whether it's over the clothes or under the clothes, clearly touching was going on. The bottom line is, are you convicted [sic] beyond a reasonable doubt that it was done with a lewd intent?"[5]

The same would have been true if defendant's August 26 statement had not been admitted into evidence as the defense would have still been confronted with the testimony of M.F. and E.Z. Both children provided significant details regarding defendant's conduct. We see no material inconsistencies in their accounts and the record does not suggest they had any motivation to testify falsely.[6] The acts described by the children, e.g., digital penetration of the anus, masturbation by defendant, oral copulation by defendant, were without question "lewd" and would have been unrebutted if defendant's August 26 interview had not been admitted into evidence. We now turn to what would have been the only remaining issue—defendant's intent.

---

[5] Each alleged offense had a scienter component. (§§ 288, subd. (a) [lewd act is an act done "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of [the defendant] or the child"]; 288.5, subd. (a) [touching with intent to sexually arouse]; 288.7, subd. (b) [incorporating section 289 which requires the penetration be "for the purpose of sexual arousal, gratification, or abuse"].)

[6] While there is nothing in the record to suggest the children were untruthful, we note credence was lent to E.Z.'s account of defendant penetrating his anus by F.Z.'s testimony that, after E.Z. had been violated, she discovered E.Z. accidently defecated in the bathroom sink. There was no evidence the defecation was triggered by anything other than defendant's misconduct.

9

Under the circumstances of this case, it is difficult to fathom the acts of sexual malfeasance described by the children unaccompanied by defendant's lewd intent. Nonetheless, the fatal strike to any possible defense that defendant lacked the requisite mens rea was his August 24 comment to Rivera. In that statement, after being confronted by F.Z. about his misdeeds with her children, and after receiving and understanding his *Miranda* rights, defendant admitted to Rivera that he knew what he had done was wrong. In other words, the conduct was not, in any respect, accidental or innocent.

Given the weight of the evidence, we are convinced, beyond a reasonable doubt, the result of defendant's trial would have been the same even if his August 26 confession was ruled inadmissible.

B.     The Term Imposed on Count 3 Must Be Corrected

With respect to count 3, defendant was sentenced to a consecutive midterm of six years for committing a lewd act on a child (§ 288, subd. (a)). It is true that a trial court has the discretion to impose full consecutive sentences for certain sex offenses. (§ 667.6, subds. (c), (d) & (e).) However, the Legislature has not included the offense of committing a lewd act on a child as one of those offenses. (§ 667.6, subd. (e).) Thus, pursuant to section 1170.1, subdivision (a),  the trial court was permitted to impose a consecutive sentence for that offense but the consecutive term was  limited to one-third of the midterm..

Accordingly, we accept the Attorney General's concession that the abstract of judgment should be amended to reflect a consecutive term of two years on count 3.

10

# DISPOSITION

The trial court is ordered to correct the abstract of judgment to reflect a consecutive term of two years on count 3 and to forward a corrected abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KUMAR, J.[*]


We concur:


KRIEGLER, Acting P. J.


BAKER, J.

---

[*]     Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.